Gaston, Judge,
 

 after briefly stating the case, proceeded: • — Our duty is to ascertain and pronounce, whether the instruction complained of be in law erroneous. If it be, the judgment must be reversed. In discharging this duty, we must not permit our understandings to be in the least swayed by the equity'or'hardship of the case. Whatever thesemiay be, must be left to the decision of the tribunal to which the country has given jurisdiction of such matters. The security of all requires, that in a.court of law whatever the law prescribes, should be sacredly observed.
 

 To uphold the construction complained of, it must be shown that by force of one or the other or both Of these deeds, or by the legal effect of the conduct of the plaintiff, or by the combined operation of these instruments and
 
 *463
 
 this conduct, the plaintiff has
 
 lost
 
 his property in the slave sued for, which cannot be, unless he has thereby transferred it to some other. The construction therefore necessarily holds, that the plaintiff has transferred his slave. We feel ourselves obliged to declare, that in this respect it is erroneous.
 

 The negro in dispute is not conveyed nor attempted to be conveyed in either of the deeds by name. If comprehended within them, it must be because he is included within the general words used by Arthur Jones the elder, “ my estate,” or “ my property,” or, “ all the property I possess.” We hold it clear, that these general words do not pass or purport to pass anything which was not held by the grantor as his own property. We cannot understand them as applying to the property of others, in the occupancy of the grantor. It is indispensable, therefore, before any operation upon this slave can be ascribed to these instruments, that it shall appear that the slave was then held by the grantor as
 
 his property,
 
 and was not held as the property, and by permission of the plaintiff. The law always presumes that every possession is consistent with right. If the negro was then the property of the plaintiff, retained by his father under agreement with the plaintiff, it was held as the property of the plaintiff. If * ‘ * * there was evidence tending to establish the fact, that although the slave was then in truth, and to the knowledge of the father, the property of the plaintiff, he was nevertheless held adversely to the plaintiff, and as his own property, (on which point we forbear to venture an opinion,) still the
 
 Court
 
 could not assume such to be the fact, and upon the faith of that fact declare the slave included ... . . , . within this general description.
 

 It is strenuously urged, however, that the plaintiff was concluded, and estopped by his deceitful concealment and misrepresentation of the ownership of the property conveyed by his deed, from setting up any claim under that deed, to the injury of those whom he thus deceived and [imposed upon. It is conceded, that this exclusion or bar is not strictly a legal estoppel, for usually no man is estopped by any oral admission, or even any written
 
 *464
 
 admission not of record or under seal. But it is insisted, that upon the principles of good faith, a man ought not to flowed to repudiate his own representations made to influence the conduct of others, whereby
 
 he
 
 has derived any advantage, or
 
 they
 
 have been induced either to part with their property, or to forego a benefit, or incur an onerous responsibility. And it is contended, that upon this principle has been established a species of equitable estoppel, which renders such representations, when thus acted upon, conclusive evidence of the truth of the facts so represented. Distrusting
 
 my
 
 ability to free this doctrine of
 
 quasi
 
 estoppels from the perplexities which involve it, I shall not undertake to define its extent. I shall content myself with saying, that so far as equitable estop-pels have been definitively recognised as
 
 rules of law,
 
 this Court will unhesitatingly and cheerfully so respect them. But it cannot but apprehend, that they have sometimes been incautiously admitted in Courts of law, from a solicitude to advance the justice of a particular case, although from the nature of their jurisdiction, and the inflexible forms of proceeding, these Courts were not competent to the exact administration of equity. Thus it has happened, that legal certainty has been prejudiced, without the compensating advantage of effecting complete justice. All estoppels — whether estoppels at common law, or these equitable
 
 estoppels
 
 — arq
 
 founded
 
 upon the great principles of morality and public policy. Their purpose is to prevent that which deals in duplicity and inconsistency, and to establish some evidence as so conclusive a test of truth, that it shall not be gainsaid. But as the effect of an estop-pel may be to shut out the
 
 real
 
 truth, by its artificial
 
 representative,
 
 estoppels, whether legal or equitable, are not to be extended by construction. In legal phrase, they are
 
 not favoured:
 
 No man is to be precluded from showing the truth of his claim or defence, unless it be forbidden by a j positive rule of law. And especially should that rule be unequivocal, which sets up unsolemn acts or declarations, I supposed to be ascertained through uncertain, defective, I erring, or fallacious testimony, as an absolute bar to all I further investigation. It is, in general, more safe, instead!
 
 *465
 
 of annexing an arbitrary effect to such acts and declarations, to leave them to the jury as evidence of whatever inferences of fact can thence be fairly deduced. Fraud, indeed, will not thus be always defeated; but he who is thereby injured, can obtain remuneration • in damages for the wrong sustained, from a Court of' law; and he who is threatened with injury will find protection against the wrong meditated from a Court of equity, yvhich, in the exercise of its appropriate jurisdiction, converts the fraudulent agent into a trustee.
 

 We believe there is no rule of law which shuts out the plaintiff in this case from insisting on the truth of his claim, notwithstanding his former misrepresentations. The defendant, who may thus be disappointed, has not been deprived by these misrepresentations of what was before his; and the plaintiff, through the means of these misrepresentations, is not shown to have gained anything. The plaintiff stands upon his deed. The defendant has ■no-claim upon the property as a purchaser. It is argued here, and so it was held below, that the instrument of the 15th August was executed for a valuable consideration. If it were so, we do not see how the estoppel would be helped thereby, until it is first shown that the thing in dispute is contained in that deed. The covenants of the trustees in that instrument are said to constitute a consideration of value j they are the consideration, however, only for the things thereby conveyed. But the consideration of value required to bring a case within the range of an equitable estoppel, is not such a consideration as might be sufficient to raise an use, or to give technical operation to a deed of bargain and sale. But one which makes him from whom’ it moves a purchaser hr effect— shows that he has substantially bought what is transferred. It rs not alleged that these trustees have-paid or are liable to pay anything out of their'own pockets because of this transaction — that they have advanced anything as the price of the conveyance, or that they will sustain any loss in case the conveyance should be partially defeated. But besides these objections, to hold that the plaintiff has by his representations or misrepresentations express or tacit
 
 *466
 
 transferred the slave in question, would be to violate the positive law of the state. There is no consideration moving to him for the pretended transfer — as to him then it is a
 
 gift.
 
 The act of 1806, declaring what gifts of slaves shall be valid, peremptorily declares, that no gift thereafter to be made of any slave, shall be good or available, either at law or in equity, unless the same shall be made in writing signed by the donor, attested by at least one credible witness, and registered as conveyances of land. The law cannot permit that an estoppel should be set up to defeat the law.
 
 Mytton
 
 v.
 
 Gilbert,
 
 2 Term, 169.
 

 We think there was also error in rejecting the testimony offered, that on the day of the, execution, and before the execution of the instrument of the 11th of August, a conversation occurred between the plaintiff and his father, in which the latter assured him, that by becoming a party thereto, his right under the deed of gift would not be prejudiced. If it is sought to divest the plaintiff of his property by reason of his deceitful conduct, he ought to be permitted to show any circumstances attending the transaction, which may tend to prove that he was himself misled. Such evidence, too,
 
 if believed,
 
 shows the character in which the father'held the property embraced in that deed.
 

 We hold that there was no error in rejecting the testimony offered by the plaintiff to show a different consideration for, his deed of gift, than that therein mentioned, nor in admitting the trustees to testify as witnesses for the ■defendant. The general rule with respect to averring ■and showing a consideration, we understand to be, that where a specific consideration is named in the conveyance, and none others referred to in general terms,
 
 that
 
 must be regarded as the sole consideration, and negatives any other: that where a consideration is specified and others referred to in general terms, it is competent to show these forth by evidence; and that when a deed is wholly silent as to the consideration, proof of the actual consideration is admissible. We see no reason for not applying the general rule' to this case. We hold the witnesses competent, because it does not appear,that they
 
 *467
 
 or any of them had a direct interest in the event of the June, 1836. suit. Jones
 

 The judgment is reversed, and a new trial must be gA”s‘Ell> awarded below.
 

 Per Curiam. Judgment reversed.’